UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ACTIVE MORTGAGE, LLC

VERSUS

TRANS UNION, LLC, ET AL

CIVIL ACTION

NO. 09-CV-986

**RULING ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant First Advantage Credco, LLC's ("Credco") Motion to Dismiss Plaintiff's Complaint and First Amended and Restated Complaint (doc. 124)[1]. Plaintiff Active Mortgage, LLC ("Active") has filed an opposition (doc. 126) to which Defendant has replied (doc. 127). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332.

Plaintiff Active is a mortgage broker, owned by Leonard Nachman, II ("Nachman II") and Michael Bienvieu ("Bienvenu") that consummates mortgages which it then sells on the secondary market (docs. 1 and 124). As a seller of mortgages in the secondary market, Active is required to obtain credit reports their customers from each of the three national credit providers, including co-Defendant Trans Union, LLC ("Trans Union") (doc. 1). To obtain these reports, Active entered into contracts with Credco[2] and Credit Plus.[3] (doc. 124, exhibit B).

---

[1] Because Defendants reference matters outside the pleadings, the Court will treat Defendant's motion as one for summary judgment.
[2] Active's contract with Credco contained the following provisions:
　11. *In no event will [Credco] . . . have any liability to [Active] for any special, incidental, or consequential damages, including, without limitation, lost profits [or] business interruption arising out of any transaction in connection with this Agreement,* including, without

1

Prior to forming Active, Bienvenu and Leonard Nachman, III ("Nachman III"), Nachman II's son, owned another, independent mortgage broker, Broker's Home, LLC ("Broker's Home") which received its credit reports through Credit Plus (doc. 102). In August 2007, Trans Union and Credit Plus terminated Broker's Home's access to Trans Union's database due to alleged improper use of customer information (doc. 102). Nachman III then filed suit ("First Lawsuit") against Trans Union and Credit Plus (doc. 102).

While the First Lawsuit was pending, Bienvenu and Nachman II formed Active (doc. 1). Active applied to receive credit reports through Credit Plus in August 2007. At that time, Credit Plus was aware that Active was owned by Bievenu and Nachman II and that Bienvenu was serving as Active's managing member (doc. 1). In April 2009, Active applied to receive credit reports from Credco (doc. 124, exhibit B).

On November 13, 2009, Trans Union sent Credco a letter demanding that Credco terminate Active's access to Trans Union's databases (doc. 1). Trans

---

limitation in connection any Information Service or Client's use or inability to use any Software Product, whether incurred as a result of negligence or otherwise, even if such persons or any of them have been advised of such damage. . . . The maximum liability of [Credco] will not exceed an amount equal to the price paid by Client for such Information Service.

15. *Either party may terminate this agreement without cause of penalty or . . . further liability*, effective upon five (5) business days prior written notice to the other party. In addition, [Credco] may suspend providing Information Services to [Active] without notice if [Credco] believes that Client has breached any of its obligations hereunder until the breach has been fully cured to [Credco's] satisfaction. . . .

18. This agreement shall be interpreted in accordance with the laws of the state of California.

(doc. 124, exhibit B) (emphases added).
[3] Credco and Credit Plus purchase reports from each of the national credit providers, package them, and sell them at discounted rates to companies that sell mortgages on the secondary market, such as Active.

2

Union stated that the reason for the termination was that Active's principals, who were also principals of Broker's Home, had been improperly using customers' credit information (doc. 124, exhibit A, p. 35). Credco's agreement with Trans Union required it to comply should Trans Union demand that a customer's service be terminated (doc. 124, exhibit A, pp. 31, 36). That same day, Credco contacted Active and informed Active that its contract would be terminated (doc. 124, exhibit A, p. 31).

On November 17, 2009, Active filed suit against Trans Union, Credco and Credit Plus in this Court (doc. 1). Plaintiff sought a declaratory judgment that it had not violated the terms of its contract and a temporary restraining order and preliminary injunction to reinstate its access to Trans Union's reports (doc. 1). On November 18, 2009, this Court issued a temporary injunction (doc. 6) but on March 31, 2010, denied Plaintiff's request for a preliminary injunction (doc. 96). Thereafter, Trans Union again terminated Active's access to its databases and, as a result, Active was forced to cease operations (doc. 102, p. 6).

On July 2, 2010, Active filed its First Amended and Restated Complaint (doc. 102). Plaintiff alleged that (1) Credco breached the implied covenant of good faith and fair dealing; (2) it detrimentally relied on Credco's decision to provide Plaintiff with credit reports; and (3) Credco had engaged in unfair trade practices (doc. 102).

On September 16, 2010, Defendant filed its Motion to Dismiss (doc. 124). Defendant asserts that Plaintiff's case should be dismissed because (1) this

3

Court does not have subject matter jurisdiction; and (2) Plaintiff has failed to state a claim upon which relief can be granted (doc. 124).

## I. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant asserts that this Court lacks subject matter jurisdiction because Plaintiff cannot demonstrate that there is more than $75,000 in controversy (doc. 124). Defendant claims that the parties' contract disclaims liability for consequential damages and limits recovery to an amount equal to the price paid for the service, which Defendant claims is roughly $400 (doc. 124).

Plaintiff asserts that it will meet the jurisdictional amount because (1) Plaintiff claims damages in tort, as well as breach of contract, and that the provision limiting damages to the cost of service does not apply to the tort claims and (2) a Plaintiff may aggregate claims against jointly and severally liable defendants[4] to meet the jurisdictional amount (doc. 102).

In reply, Defendants assert that (1) the provision limiting damages to the amount paid for service applies to all of Plaintiff's claims, including those that sound in tort; (2) tort claims for breach of the implied duty of good faith and fair dealing only apply to insurance contracts; (3) if Credco is Trans Union's agent, Trans Union alone is responsible for Plaintiff's damages, precluding joint and several liability; and (4) Credco could not have acted in violation of the implied

---

[4] Plaintiff claims that Defendants are jointly and severally liable because Trans Union is the de facto principal of Credco (doc. 102). In support of its theory, Plaintiff points to the contract between Credco and Trans Union, which requires Credco to terminate a customer's account if instructed to do so by Trans Union (doc. 102, ¶ 88).

4

duty of good faith and fair dealing in following Trans Union's instructions (doc. 127).

Federal district courts have subject matter jurisdiction over disputes between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The plaintiff at all times bears the burden of establishing the court's subject matter jurisdiction. *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010). A party may facially or factually challenge the court's subject matter jurisdiction, and in a factual attack, the plaintiff must demonstrate that "it does not appear to a legal certainty that [its] claim is for less" than $75,000. *Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 288-89 (1938). In evaluating a factual attack, the court may consider the complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). Claims against two or more defendants can be aggregated to meet the jurisdictional amount, if the defendants are jointly liable to the plaintiff. *Jewell v. Grain Dealers Mut. Ins. Co.*, 290 F.2d 11, 13 (5th Cir. 1961).

The Court finds that it has subject matter jurisdiction over the parties' dispute. Plaintiff has adequately alleged that the parties are diverse; Active is a citizen of Louisiana and Credco is a citizen of California (doc. 102). Moreover, Plaintiff has established that "it does not appear to a legal certainty that [its] claim is for less" than $75,000. Though, the contract between Active and Credco

5

limited liability to the amount paid for the service provided (doc. 102, exhibit B, ¶ 11), or roughly $400 (doc. 124, exhibit A, p. 34), Active has asserted claims that arguably are unaffected by the limitation provision.  For instance, Plaintiff asserts that its claims for detrimental reliance and breach of the duty of good faith and fair dealing are not subject to the provision (doc. 102), and the Court necessarily must exercise subject matter jurisdiction to resolve the applicability of the provision.  Moreover, Plaintiff has asserted that Credco is the agent of Trans Union, Credco and Trans Union are jointly and severally liable, and so Plaintiff may aggregate its claims against the two parties to reach the jurisdictional amount (doc. 102).  Again, the Court necessarily must exercise subject matter jurisdiction to determine if Trans Union was the de facto principal of Credco.

Therefore, the Court will DENY Defendant's Motion to Dismiss Plaintiff's claims for lack of subject matter jurisdiction.

## II. Defendant's Motion to Dismiss for Failure to State a Claim.

Defendant asserts that Plaintiff's claims for detrimental reliance and breach of the implied covenant of good faith and fair dealing must be dismissed for failure to state a claim upon which relief can be granted (doc. 124).

A federal court may dismiss a parties complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). However, under Federal Rule of Civil Procedure 12(d), "[i]f, on motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule

56." Fed. R. Civ. P. 12(d). Summary judgment is appropriate if the evidence establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. Rule Civ. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## A. Detrimental Reliance

Plaintiff asserts that Credco tacitly represented that it would continually provide service because (1) Beinvenu agreed to convince Broker's Home to dismiss the First Lawsuit on the condition that Trans Union and Credit Plus would continue to provide credit reports; and (2) Credco initially approved Active's application to receive credit reports (doc. 124).

Defendant asserts that Plaintiff cannot establish that it detrimentally relied on Credco because (1) Credco was not a party to the First Lawsuit and had no role in negotiating its dismissal; (2) Credco never represented that it would provide credit reports on a continuing basis either expressly, or tacitly, by approving Active's application; (3) Active's reliance on such a tacit "representation" would be unreasonable, because it would contradict the clear

terms of the parties' contract; and (4) Active never detrimentally changed its position in reliance on Credco's "representation" (doc. 124).

To make out a claim for detrimental reliance the plaintiff must establish that (1) the defendant made a representation by conduct or word; (2) the plaintiff reasonably relied on the defendant's representation; and (3) the plaintiff changed its position to its detriment in reliance on the representation. *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005). The representation upon which plaintiff relies must not be vague and plaintiff's reliance cannot simply be based on assumption. *Bensco One v. Volkswagen of Am., Inc.*, 2008 U.S. Dist. LEXIS 25465, at *32 (E.D. La. 2008). Moreover, a plaintiff's reliance may be unreasonable if the purported representation contradicts the express terms an existing contract with the defendant. *Drs. Bethea, Moustakas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 404 (5th Cir. 2004).

The Court finds that there are no genuine issues of material fact. This Court previously found, in denying Plaintiff's request for a preliminary injunction, that

> Bienvenu admitted that he had no role in the dismissal [of the First Lawsuit], that he was unaware whether or not any settlement was reached in connection with the dismissal of the Broker's Home case. He further testified that he had assumed that Trans Union had full knowledge of Active Mortgage at that time.

8

(doc. 31, pp. 12-13). Regardless of Bienvenu's role in the First Lawsuit, only Trans Union and Credit Plus—not Credco—were parties to the First Lawsuit and are responsible for any representations made in furtherance of its dismissal.

In addition, Active did not apply to receive credit reports from Credco until April 24, 2009—over a year and a half after Active had begun operations (doc. 124, exhibit B). The contract between Active and Credco plainly stated that "[e]ither party may terminate [the] agreement without cause of penalty or . . . further liability" and that Credco was permitted to "suspend providing Information Services to [Active] without notice if [Credco] believe[d] that [Active] breached any of its obligations," and Active has failed to provide any evidence demonstrating that the Active and Credco altered the terms of their contract. (doc. 124, exhibit B).

The Court also finds that Defendant is entitled to prevail as a matter of law as to Plaintiff's detrimental reliance claims. Defendant has failed to produce evidence demonstrating that Credco made any concrete representations either through words or conduct. Any statements made by Trans Union or Credit Plus in relation to the First Lawsuit cannot be attributed to Credco. Though Active may have assumed that Credco tacitly agreed to continue to provide credit reports when it initially approved Active's application, assumptions based on vague conduct are not sufficient to state a claim for detrimental reliance. *Bensco One*, 2008 U.S. Dist. LEXIS 25465, at *32.

Moreover, Active's reliance on Credco's alleged tacit "representation" was not reasonable because it contradicted the clear language of the parties' contract, *St. Paul*, 376 F.3d at 404, which afforded either party the right to terminate the contract without suffering liability and permitted Credco to unilaterally terminate the contract if it believed Credco had not complied with its obligations under the contract (doc. 124, exhibit B).

Lastly, Plaintiff has failed to establish that it detrimentally changed its position in reliance on Credco's alleged tacit "representation" that it would continually provide credit reports. Again, Credco was not a party to the First Lawsuit, and had no role in the dismissal of that suit. Also, Active had already been in business for over a year and a half before signing a contract with Credco, and has not demonstrated that it in any way changed its position upon being initially approved for service by Credco.

Therefore, the Court will GRANT Defendant's Motion to Dismiss Plaintiff's claims for detrimental reliance (doc. 124).

### B. Breach of Duty of Good Faith and Fair Dealing

Plaintiff asserts that Credco breached the implied covenant of good faith and fair dealing when it terminated Active's account despite having no indication that Active had engaged in impropriety and by failing to give Active notice and an opportunity to explain why it s account should not be terminated (doc. 102, ¶ 74).

Defendants assert that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because (1) damages are an

essential element to Plaintiff's claim, and the only losses Plaintiffs incurred relate to lost profits and business interruption, which are explicitly excluded under the parties' contract (doc. 124); and (2) Plaintiff cannot state a claim against Defendant for the Defendant's exercise a right expressly provided in the contract, namely, the right of either party to unilaterally terminate the agreement (doc. 127).

California implies a covenant of good faith and fair dealing in every contract.[5] *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 726 (Cal. 1992). However, the type of conduct prohibited by the implied covenant of good faith and fair dealing is determined by the purposes and express terms of the contract. *Id.* at 727. A party to a contract may not invoke the implied covenant of good faith and fair dealing to prohibit the other from doing that which is expressly permitted by their agreement. *Id.* at 728.

The Court finds that there is no genuine issue of material fact. The parties contract expressly granted either party the right to terminate the contract without suffering liability and permitted Credco to unilaterally terminate the contract if it believed Credco had not complied with its obligations under the contract (doc. 124, exhibit B). Nothing in the parties' contract obligated Credco to make any kind of threshold finding of impropriety prior to terminating Active's account or to inform Active of its reasons for terminating the account (doc. 124, exhibit B).

---

[5] The contract between Active and Credco states that "[the] agreement shall be interpreted in accordance with the laws of the state of California" (doc. 124, exhibit B, ¶ 18). Therefore, if the contract contains an implied duty of good faith and fair dealing, it must arise under California law.

Moreover, Credco was contractually obligated to terminate the account of a customer if instructed by Trans Union to do so (doc. 124, exhibit A).

The Court also finds that Credco is entitled to prevail as a matter of law. Credco was contractually authorized to unilaterally terminate Active's account, and a party does not breach the duty of good faith and fair dealing by simply exercising a right conferred by contract. *Id.* at 728. Moreover, Credco did not engage in any conduct that can be considered in bad faith. Credco terminated Active's account in accordance with Trans Union's instructions, which it was contractually obligated to do (doc. 124, exhibit A). Simply put, Credco was both contractually authorized and contractually obligated to terminate Active's account.

Therefore, the Court will GRANT Defendant's Motion to Dismiss as to Plaintiff's claims for breach of the duty of good faith and fair dealing (doc. 124, pp. 17-20).

## Conclusion

Accordingly, because the Court necessarily must exercise jurisdiction to determine the validity of Plaintiff's claims and the applicability of provisions limiting Plaintiff's damages, the Court DENIES Defendant's Motion to Dismiss (doc. 124), in part, as it relates to the Court's subject matter jurisdiction. However, because Plaintiff has failed to come forth with facts supporting its claims for detrimental reliance and breach of the duty of good faith and fair

dealing, the Court GRANTS Defendant's Motion to Dismiss[6] (doc. 124), in part, and dismisses Plaintiff's claims for detrimental reliance and breach of the duty of good faith and fair dealing .

Signed in Baton Rouge, Louisiana, this 4th day of November, 2010.

JUDGE JAMES J. BRADY
MIDDLE DISTRICT OF LOUISIANA

---

[6] The Court treats Plaintiff's Motion to Dismiss as one for summary judgment.