UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ACTIVE MORTGAGE, LLC

VERSUS

TRANS UNION, LLC, ET AL

CIVIL ACTION

NO. 09-CV-986

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant First Advantage Credco, LLC's ("Credco") Motion (doc. 134) for Summary Judgment. Plaintiff Active Mortgage, LLC ("Active") has filed an opposition (doc. 138). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332.

### Background

**I. Facts**

This case arises out of the allegedly wrongful termination of a mortgage broker's contracts with two companies which provided the broker with necessary credit reports. The following facts are undisputed. Plaintiff Active is a mortgage broker owned by Leonard Nachman, II and Michael Bienvenu that consummates mortgages which it then sells on the secondary market (doc. 134-1).

As a seller of mortgages in the secondary market, Active is required to obtain credit reports on their customers from each of the three national credit providers, including co-Defendant Trans Union, LLC ("Trans Union") (doc. 1). In April 2009, Active contracted with Credco, a company which purchases reports

1

from each of the national credit providers, packages them, and sells them to mortgage brokers at discounted rates (doc. 124, ex. B). Credco's contract with Active contained the following provision:

> *Either party may terminate the agreement without cause of penalty* or . . . further liability, effective upon five (5) business days prior written notice to the other party. *In addition, [Credco] may suspend providing Information Services to [Active] without notice if [Credco] believes that Client has breached any of its obligations hereunder* until the breach has been fully cured to [Credco's] satisfaction.

(doc. 124, ex. B) (emphasis added).

Prior to contracting with Active, Credco entered a contract with Trans Union which stated that "[f]rom time to time, Trans Union may communicate to [Credco] the identity of certain businesses that are prohibited from receiving or accessing Trans Union Data. *Upon receipt of any such communication, [Credco] shall promptly terminate such identified End Users from gaining access to Trans Union data*" (doc. 124, ex. A, pp. 31, 36) (emphasis added). On November 13, 2009, Trans Union sent Credco a letter demanding that Credco terminate Active's access to Trans Union's databases (doc. 1). Trans Union claimed that Active's principals had been improperly using customers' credit information through another mortgage broker, Broker's Home, LLC ("Broker's Home") (doc.

124, ex. A, p. 35)[1]. In accordance with its contract with Trans Union, Credco informed Active that it was terminating Active's service (doc. 124, ex. A, p. 31).

**II. Procedu ral History**

On November 17, 2009, Plaintiff Active filed suit against Trans Union, Credco and Credit Plus. In its First Amended and Restated Complaint, Plaintiff alleges that (1) Credco breached the implied covenant of good faith and fair dealing; (2) it detrimentally relied on Credco's decision to provide Plaintiff with credit reports; and (3) Credco had engaged in unfair trade practices under the Louisiana Unfair Trade Practices Act ("LUTPA") (doc. 102). On November 4, 2010, this Court dismissed Plaintiff's good faith and fair dealing and detrimental reliance claims against Credco (doc. 129)

On February 24, 2011, Credco filed its Motion (doc. 134) for Summary Judgment as to Plaintiff's unfair trade practices claim—Plaintiff's last remaining claim against Credco. Credco asserts that the Court's November 4, 2010 ruling foreclosed Plaintiff's claims under LUTPA. In addition, Credco notes that Plaintiff did not claim that Credco engaged in unfair trade practices in Plaintiff's First Amended and Restated Complaint (doc. 102).

---

[1] Prior to forming Active, Michael Bienvenu and Leonard Nachman, III, Leonard Nachman II's son, owned and operated Broker's Home (doc. 134-1). Broker's Home received its credit reports through co-defendant Credit Plus (doc. 134-1). In August 2007, Trans Union and Credit Plus terminated Broker's Home's access to Trans Union's database due to alleged improper use of customer information (doc. 102). Nachman III then filed suit against Trans Union and Credit Plus (doc. 102). While the First Lawsuit was pending, Bienvenu and Nachman II formed Active, with Bienvenu serving as its managing member (doc. 1).

On March 17, 2011, Plaintiff filed its opposition (doc. 138). Plaintiff concedes that the Court's prior ruling is likely dispositive of its LUTPA claim, but reurges the arguments contained in its opposition to Credco's prior motion to dismiss (doc. 138).

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant has the burden of proof at trial, it must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. If the movant does so, the burden shifts to the nonmovant to show, by affidavit or otherwise, that a genuine issue of material fact remains for the factfinder to resolve. *Id.* at 323.

## Discussion

Credco asserts that because this Court has previously held that (1) Credco was contractually authorized to terminate its contract with Plaintiff and made no

concrete representations otherwise[2] and (2) Credco was contractually obligated to terminate Plaintiff's account upon being instructed to do so by Trans Union, Plaintiff cannot maintain a claim for unfair trade practices.[3] In addition, Credco points out that Plaintiff's First Amended and Restated Complaint only references Trans Union as having engaged in unfair trade practices (doc. 102).

On March 17, 2011, Plaintiff filed its opposition (doc. 138). Plaintiff concedes that, because its "claims against Credco under LUTPA arise under the same factual and legal issues relating to the 'bad faith' conduct of Credco," its "believes the prior ruling on the court is dispositive of the issues relating to

---

[2] In its November 4, 2010 ruling, this Court stated that:

> Any statements made by Trans Union or Credit Plus in relation to the First Lawsuit cannot be attributed to Credco. Though Active may have assumed that Credco tacitly agreed to continue to provide credit reports when it initially approved Active's application, assumptions based on vague conduct are not sufficient to state a claim for detrimental reliance. Moreover, Active's reliance on Credco's alleged tacit "representation" was not reasonable because it contradicted the clear language of the parties' contract, which afforded either party the right to terminate the contract without suffering liability and permitted Credco to unilaterally terminate the contract if it believed Credco had not complied with its obligations under the contract.

(doc. 129, p. 9-10) (internal citations omitted).

[3] In its November 4, 2010 ruling, this Court stated that:

> Credco was contractually authorized to unilaterally terminate Active's account, and a party does not breach the duty of good faith and fair dealing by simply exercising a right conferred by contract. Moreover, Credco did not engage in any conduct that can be considered in bad faith. Credco terminated Active's account in accordance with Trans Union's instructions, which it was contractually obligated to do. Simply put, Credco was both contractually authorized and contractually obligated to terminate Active's account.

(doc. 129, p. 12) (internal citations omitted).

LUTPA" (doc. 138, p. 2). Nonetheless, Plaintiff reurges the arguments contained in its opposition to Credco's prior motion to dismiss (doc. 138).

In order to recover under LUTPA, a plaintiff must establish that the defendant engaged in unethical conduct, such as fraud, which offends established public policy and is "immoral, unethical, oppressive or unscrupulous." *Tubos de Acero de Mex., SA v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002); *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000). On the other hand, LUTPA does not prohibit a party from reasonable exercising its business judgment or exercising its contractual rights, nor is LUTPA an alternative remedy for mere breaches of contract. *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *Inka's S'Coolwear, Inc. v. School Time, LLC*, 725 So. 2d 496, 502 (La. Ct. App. 1st Cir. 1998).

The Court finds that there are no genuine issues of material fact. Credco entered a contract with Trans Union which required it to terminate an end user's access to Trans Union's database at Trans Union's request (doc. 124, ex. A, pp. 31, 36). Plaintiff signed a contract with Credco, wherein both parties were authorized to unilaterally terminate the contract (doc. 124, ex. B). Upon receiving instructions from Trans Union to terminate Credco's account, Credco did so.

The Court also finds that Credco is entitled to judgment as a matter of law. In following Trans Union's instructions and unilaterally terminating its contract with Plaintiff, Credco did nothing more than exercise its rights and obligations under the applicable contracts. As such, Credco's actions do not bring it within

LUTPA" (doc. 138, p. 2). Nonetheless, Plaintiff reurges the arguments contained in its opposition to Credco's prior motion to dismiss (doc. 138).

In order to recover under LUTPA, a plaintiff must establish that the defendant engaged in unethical conduct, such as fraud, which offends established public policy and is "immoral, unethical, oppressive or unscrupulous." *Tubos de Acero de Mex., SA v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002); *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000). On the other hand, LUTPA does not prohibit a party from reasonable exercising its business judgment or exercising its contractual rights, nor is LUTPA an alternative remedy for mere breaches of contract. *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *Inka's S'Coolwear, Inc. v. School Time, LLC*, 725 So. 2d 496, 502 (La. Ct. App. 1st Cir. 1998).

The Court finds that there are no genuine issues of material fact. Credco entered a contract with Trans Union which required it to terminate an end user's access to Trans Union's database at Trans Union's request (doc. 124, ex. A, pp. 31, 36). Plaintiff signed a contract with Credco, wherein both parties were authorized to unilaterally terminate the contract (doc. 124, ex. B). Upon receiving instructions from Trans Union to terminate Credco's account, Credco did so.

The Court also finds that Credco is entitled to judgment as a matter of law. In following Trans Union's instructions and unilaterally terminating its contract with Plaintiff, Credco did nothing more than exercise its rights and obligations under the applicable contracts. As such, Credco's actions do not bring it within

the ambit of the LUTPA. *Turner*, 989 F.2d at 1422; *Inka's S'Coolwear*, 725 So. 2d at 502.

## Conclusion

Accordingly, the Court hereby GRANTS Defendant Credco's Motion (doc. 134) for Summary Judgment. Plaintiff, therefore, has no more remaining claims against Credco, and so Credco is dismissed from the suit.

Signed in Baton Rouge, Louisiana, this 74 day of April, 2010.

HONORABLE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA