UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ACTIVE MORTGAGE, LLC

VERSUS

TRANS UNION, LLC, ET AL

CIVIL ACTION

NO. 09-CV-986

## RULING ON DEFENDANTS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Motions for Summary Judgment by Defendants Trans Union (doc. 148) and Credit Plus, Inc. ("Credit Plus") (doc. 146). Plaintiff Active Mortgage ("Active") filed a single opposition to both motions (doc. 154). Trans Union filed a reply (doc. 159) while Credit Plus did not. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the following reasons, the Defendants motions are GRANTED.

## BACKGROUND

Plaintiff Active is a mortgage broker owned by Michael Bienvenu ("Bienvenu") and Leonard Nachman II ("Nachman II"). As a mortgage broker, Active consummates mortgages with clients and then sells them on the secondary market.[1] In order to make these transactions, Active is required to submit credit reports from their clients from all three of the national credit providers, of which Trans Union is one. Companies such as Credit Plus and First

---

[1] Except where otherwise noted, the factual background is based on Active's Complaint (doc. 1).

Advantage Credco, LLC ("Credco")[2] act as go betweens; Active signed contracts with both to provide credit reports from Trans Union. (Doc. 124, ex. B).

Before starting Active, Bienvenu had owned another mortgage broker, Broker's Home, LLC (Broker's Home") with Nachman II's father, Leonard Nachman III ("Nachman III"). Broker's Home had a contract with Credit Plus to provide its credit reports. That contract was terminated in August 2007 by Trans Union and Credit Plus due to alleged improper use of consumer information. (Doc. 102). Nachman III filed suit ("First Lawsuit") against Trans Union and Credit Plus. During the pendency of the First Lawsuit, Bienvenu and Nachman II started Active. In August 2007, Active successfully applied to Credit Plus to receive its credit reports, with Credit Plus being aware of Active's ownership and Bienvenu's participation. In April 2009, Active applied with Credco to receive credit reports. (Doc. 124, ex. B). On November 13, 2009, Trans Union sent letters to Credit Plus and Credco demanding that they terminate Active's access to its credit reports. These demands were made pursuant to specific terms of their contract, which required Credit Plus and Credco to terminate any customer's access upon demand. (Doc. 124, ex. A at 31, 36). Both companies notified Active its access was terminated shortly thereafter.

Active filed suit against all three defendants on November 17, 2009, seeking a declaratory judgment that it had not violated any of the terms of its

---

[2] Credco has been dismissed from this case after the Court granted two of its motions for summary judgment (docs. 129 and 139). Pending before the Court is Credco's Motion for Entry of Final Judgment (doc. 156).

contracts with Credit Plus and Credco and a temporary restraining order and preliminary injunction to reinstate the credit reports. The Court issued the temporary injunction (doc. 6) on November 18, 2009 but then denied the preliminary injunction (doc. 96) on March 31, 2010. After this, Trans Union again terminated Active's access to credit information and Active ceased operations. (Doc. 102 at 6).

On July 2, 2010, Active filed an amended complaint, alleging (1) Defendants breached the implied covenant of good faith and fair dealing; (2) Active detrimentally relied on Defendants' decision to provide it with credit reports; and (3) Defendants engaged in unfair trade practices. (Doc. 102). Subsequently, all claims against Credco were dismissed by the Court on summary judgment. (Docs. 129 and 139). Trans Union and Credit Plus now bring separate motions for summary judgment. The Court will address them together.

## RELEVANT CONTRACT LANGUAGE

The contract between **Active** and **Credit Plus** contained the following relevant language:

> This agreement shall continue in force without any fixed date of termination . . . subject to the right of [Credit Plus] at any time and without prior notice, to terminate this agreement in the event of any . . . violation by user any provision of this agreement . . .

* * *

3

User herby agrees to comply with all policies and procedures instituted by [Credit Plus] and required by [Credit Plus]'s consumer reporting vendors.

* * *

User will implement strict security procedures designed to ensure that User's employees and users use the services and the credit information in accordance with this Agreement and for no purposes other than as permitted by this agreement.

* * *

User agrees to notify [Credit Plus] of any change in ownership ro control fifteen days prior to any such change. [Credit Plus] may require the new ownership to re-apply for the services provided for herein . . . .

* * *

[Credit Plus] will provide, and User will utilize, training and training materials to User in order for User to comply with the federal Fair Credit Reporting Act and with the policies and procedures required by [Credit Plus]'s consumer reporting vendors. A copy of the training materials are provided by the U.S. Federal Trade Commission at . . . .

* * *

Customer, in order to receive consumer credit information from Trans Union, LLC, through [Credit Plus], agrees to comply with the following conditions required by Trans Union, which may be in addition to those outlined in the Customer Service Agreement ("Agreement"). Customer understands and agrees that Trans Union's delivery of Information to Customer via [Credit Plus] is specifically conditioned upon Customer's agreement with the provisions set forth in this Agreement. Customer understands and agrees that these requirements pertain to all of its employees, managers and owners and that all persons having access to Trans Union consumer credit information, whether existing or future employees, will be trained to understand and comply with these obligations.

4

Case 3:09-cv-00986-JJB-CN   Document 170   02/15/12   Page 4 of 12

> 1. Customer hereby agrees to comply with all current and future policies and procedures instituted by CRA and required by Trans Union.

> \* \* \*

> Customer agrees to take precautions to secure its systems used to access consumer credit information pursuant to this Agreement. To that end, the following requirement have been established:
> The subscriber code and password must be protected in such a way that this sensitive information is known only to key personnel. Under no circumstances should unauthorized persons have knowledge of the subscriber password.

> \* \* \*

> The ability to obtain credit information must be restricted to a few key personnel.

(Ex. C). The contract between **Trans Union** and **Credit Plus** contained the following provisions:

> Reseller shall comply with all federal, state, and local statute, regulations and rules applicable to it, including, without limitation, the FCRA and all reasonable procedures prescribed by TransUnion including, but not limited to those set forth in the Policy, to verify the identity of End Users who will obtain Consumer Reports to make certain that such End Users are legitimate businesses, have a permissible purpose for obtaining credit reports, and are not Unauthorized Users, as such term is defined in the Policy. If, as a result of the verifications outlined in the Policy, the prospective End User is found to be an Unauthorized User, or is found to have no permissible purpose to obtain credit reports, Reseller shall not enter into a Service Agreement with such End User. Reseller further warrants that it will require by written contract with its End Users that such End Users comply with the same obligations of compliance with all laws. *TransUnion reserves the right to terminate any End User at any time with or without notice.*

(Ex. A § I, ¶ J) (Emphasis added).

## **STANDARD OF REVIEW**

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant has the burden of proof at trial, it must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. If the movant does so, the burden shifts to the nonmovant to show, by affidavit or otherwise, that a genuine issue of material fact remains for the factfinder to resolve. *Id.* at 323.

## **DISCUSSION**

Breach of Implied Covenant of Good Faith and Fair Dealing

Trans Union argues this claim should be dismissed because (1) Active has no third-party beneficiary rights under the contract between Trans Union and Credit Plus; (2) the implied duty of good faith does not trump express contract terms; and (3) given Trans Union's obligations under the FCRA, its decision to terminate Active did not violate the duty of good faith. (Doc. 148-4 at 8-13).

Active argues that Trans Union holds a monopoly position in the credit rating industry, in that in order to sell a borrower's mortgage, a company such as Active needs credit reports from all three of the major agencies. Thus, any one of them, by cancelling access, is in effect putting a company such as Active out of business. This monopoly position, Active argues, demands a heightened responsibility. (Doc. 154 at 13-15).

In dismissing this claim against Credco, the Court held that California law prohibited a party from invoking the implied covenant of good faith and fair dealing to prevent a party from doing what is expressly allowed by their agreement. (Doc. 129 at 11). The same is true under Louisiana law. See *Clark v. America's Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) ("[Plaintiffs] cannot now be heard to argue that actions expressly authorized by [the contract] constitute a breach of the implied covenant of good faith and fair dealing."). As the contract between Trans Union and Credit Plus expressly provides that Trans Union may terminate any end user with or without notice, this claim is barred.

Credit Plus points out that Maryland law, which its contract with Active provides shall govern, does not recognize a separate cause of action for breach of the duty of good faith; rather, it is part of a breach of contract claim. As Active has not brought a breach of contract claim against Credit Plus, under Maryland law this claim is dismissed. Even were it not, the Court finds no genuine dispute as to material fact that Credit Plus breached its duty. The express terms of the

7

contract provide that Credit Plus could terminate access if Active violated a term of the contract. Previously, the Court has found that Mr. Bienvenu, in testimony before this Court, admitted at least four breaches of Active's contract with Credit Plus. (Doc. 96 at 10-11). Therefore, Credit Plus was within its rights to terminate the contract and Active has not claim for breach of the implied duty of good faith. This claim is dismissed.

Detrimental Reliance

Likewise, Active's detrimental reliance claims are without merit. To prevail on a claim for detrimental reliance, the plaintiff must establish that (1) the defendant made a representation by conduct or word; (2) the plaintiff reasonably relied on that representation; and (3) the plaintiff suffered a change of position to his detriment due to this reliance. *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005). Trans Union (doc. 148-4 at 17-20) argues Active has not presented evidence to satisfy any of the elements. Active counters that there is a genuine dispute as to all three elements. (Doc. 154 at 24-28).

The Court finds there is no genuine dispute as to the material facts and that summary judgment on this claim is appropriate. Active alleges "it relied to its detriment in Credit Plus and Trans Union approving the continual providing of financial reporting information by Credit Plus to [Active] even though both had knowledge that Mr. Bienvenu was operating [Active]." (Doc. 154 at 28). It also claims it relied on statement by Credit Plus that a loan officer could apply for a

8

Case 3:09-cv-00986-JJB-CN   Document 170   02/15/12   Page 8 of 12

loan through his employer. *Id.* It then states this reliance was reasonable and that it was hurt by this reasonable reliance. *Id.* As the alleged statements were not made by Trans Union, this element is not satisfied as to Trans Union and the claim is dismissed as to it.

Active's agency theory (doc 154 at 7-9) does not change the analysis. There is not the element of control in the relationship necessary for there to be a principal/agent relationship under Louisiana law, which requires some sort of right to control the agent's actions by the principal along the lines of a master/servant relationship. *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 638 F. Supp. 2d 632, 641 (E.D. La 2009) (citations omitted). As the only evidence of control is the right to terminate an end user without notice provision, the Court finds this is not the level of control required for an principal/agent relationship.

As for Credit Plus, Maryland law will apply to this claim. Under that state's law, a plaintiff must show (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promise; (3) that this promise does in fact induce the actual and reasonable action or forbearance; and (4) this causes a detriment that can only be avoided by enforcing the promise. *Konover Prop Trust, Inc. v. WHE Assocs.,* 142 Md. App. 476, 483-84 (2002). Credit Plus argues Active cannot show any of the four elements. Active does not discuss how Maryland law impacts its claim.

The Court finds that, under Maryland law, this claim must be dismissed.

9

Case 3:09-cv-00986-JJB-CN    Document 170    02/15/12    Page 9 of 12

Active seems to be saying that Credit Plus began giving it credit reports under their contract even though it knew Bienvenu was operating Active. Thus, they appear to be arguing Credit Plus knew Active was in violation of their contract from the beginning and allowed them to continue. To show a clear and definite promise, Maryland law requires something more than an implied agreement. *Konover,* 142 Md. App. At 484. At most, the alleged "approving and continual providing" would be an implied agreement. A clear and definite promise would be along the lines of, "We understand that having Mr. Bienvenu running your company would violate your contract but we will allow this particular transgression to pass." Nothing of the sort is alleged to have been said. Therefore, there was no clear and definite promise made. The other three elements are pretermitted. The claim is dismissed.

Louisiana Unfair Trade Practices Act ("LUTPA")

Trans Union claims Active's LUTPA claim fails because (1) breach of contract is not a LUTPA violation; (2) the exercise of contract rights is not a LUTPA violation; and (3) the exercise of business discretion is not a LUTPA violation. (Doc. 159 at 19-20). For its part, Credit Plus argues that Active does not expressly make a LUTPA claim against it in its complaint. Further, as Maryland law applies to the dispute between these parties, Active could not bring a LUTPA claim anyway. In the event it does apply, Credit Plus argues the claim against it must be dismissed for the same reasons as in Credco's case (doc.

139).  Active counters that there is a genuine dispute as to material fact in that, if the trier of fact finds the initial termination of Active was done in bad faith based upon the allegedly bad relationship with Randall Nachman there "may" exist a LUTPA claim.  (Doc. 154 at 28).

In order to recover under LUTPA, a plaintiff must show that the defendant engaged in unethical conduct, such as fraud, that offends public policy and is "immoral, unethical, oppressive or unscrupulous." *Tubos de Acero de Mex, SA v. Am. Int'l Inv. Corp*., 292 F.3d 471, 480 (5th Cir. 2002).  However, LUTPA does not prohibit a party from reasonably exercising its business judgment or contract rights, nor is it an alternative remedy for breaches of contract.  *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir. 1993).

The Court finds no genuine dispute as to material fact exists in regard to either Defendant.  For the same reasons assigned to the Credco motion (doc. 139 at 6) on this claim, the claim against Credit Plus is dismissed.

As for Trans Union, Trans Union correctly notes that the Court has ruled previously in this case, relating to Credco's motions, that the exercise of express contract rights cannot form the basis for a LUTPA claim (doc. 139 at 6-7).  Active gives no reasons why this should not apply to the LUTPA claims against these Defendants.February 15, 2012.

The Court finds that Trans Union's motive behind its initial decision to terminate Active's access to credit reports through Credit Plus is not relevant to this claim. Trans Union was exercising a clear and express right provided in its contract with Credit Plus. Even if it were, the motive for terminating would not constitute bad faith. In its stated reasons for termination, Trans Union alluded to its suspicion that Active was merely a continuation of Broker's Home. This suspicion was ultimately proven true through discovery. Therefore, this would not be the sort of "immoral, unethical, oppressive or unscrupulous action the LUTPA was designed to remedy. This claim is dismissed.

In dismissing these claims, the Court notes Active's admission that, "[i]f the conduct of the parties and the reason for termination is not a legal defense, [Active] concedes that the same summary judgment [as granted in favor of Credco] should be granted in this case." (Doc. 154 at 4). As this is the case, all claims are dismissed.

## CONCLUSION

For the reasons issued above, the Court finds no genuine dispute as to material fact. Defendants' motions for summary judgment (Docs. 146 and 148) are GRANTED. All claims against Trans Union and Credit Plus are dismissed. Signed in Baton Rouge, Louisiana, on February 14, 2012 .

                                        **JUDGE JAMES J. BRADY**
                                        **UNITED STATES DISTRICT COURT**
                                        **MIDDLE DISTRICT OF LOUISIANA**